## ALTER'S EXECUTORS *v.* McBRIDE.

Under the acts of Assembly, the school directors are authorized to assess upon the inhabitants of their district three times the amount of the fund received under the appropriation by the state for the year for which such assessment is laid; and that appropriation is based upon the number of taxable inhabitants in the district.

In error from the Common Pleas of Allegheny.

*Nov.* 5. McBride brought replevin for a cow sold to Alter under a distress for school-taxes assessed against McBride. Notice had been given at the sale that the tax was illegally assessed, and was excessive, and that was the question on the record. In the year for which the assessment was made, Moon township, which constituted the school district in which McBride resided, contained two hundred and sixty taxable inhabitants. For that year the district received out of the appropriation, by the state, $260; and the assessment for that year was for three times that amount. In September, the duplicate and warrant of distress was delivered to the collector, and McBride paid one-half of the amount. The sale was made under that authority, and the question was, whether the assessment was excessive. The court (PATTON, J.) instructed the jury that the directors, in their assessment, were restricted to the amount to which the district was entitled out of the appropriation by the act of 1836.

*Darrah*, for the plaintiff in error, on this point cited Wilson *v.* Lewistown, 1 Watts & Serg. 430, and the acts of Assembly.

*Woods*, contrà.

*Nov.* 13.   BELL, J.—The correct solution of the principal point raised by this case depends on the proper construction of the act of the 13th June, 1836, relating to common schools, and the supplement of 12th April, 1838.   By the eleventh section of the former statute, $200,000 was appropriated out of the common-school fund for the year 1837, and the like sum annually thereafter to be apportioned among the several school districts of the Commonwealth, according to their number of taxable inhabitants.   The fourth section directs the school directors of any school district, which might adopt the common-school system, annually to authorize to be levied such an amount of tax on the district as they may think necessary for school purposes—not less than equal to, nor more than treble, the amount which the district is entitled to receive out of the annual state appropriation.   The third section of the act of 1838 makes it the duty of the commissioners of each county in the state, triennially to ascertain, with the assistance of the re spective assessors, the exact number of the resident taxable citizens in each common-school district in their several counties, and to certify the same to the superintendent of common schools, who is directed to adopt the number of taxables thus certified to him as the basis of distribution of the state appropriation.   The first section of the same act provided that the sum of $108,919 should be added to the annual school appropriation for the school year, to commence on the first Monday of June, 1838; and such sum annually thereafter as will make the amount of the appropriation equal to $1 for each taxable citizen of the Commonwealth—"said increased appropriation to be distributed and paid out in the manner directed by the act to which this is a supplement, without any increase of taxation beyond the amount therein named."

In the year 1844, the number of taxable inhabitants of Moon township, constituting a school district within the county of Allegheny, was duly ascertained and certified to be two hundred and sixty ; and, consequently, the school directors of the district received of the common-school fund, set apart by the state, the sum of $260.   Professing to proceed under the acts of Assembly I have cited, the school directors caused to be assessed and levied within the township for the support of schools, a tax equal to treble the amount received from the state, making that the basis of the assessment.   The amount thus levied is double what could have been legally assessed, taking the share of Moon township in the $200,000 appropriated by the act of 1836 as the basis of the

assessment. The plaintiff below, having paid one-half the amount thus assessed upon his property, refused to pay the balance, on the ground that the tax was excessive, illegal, and void—the school directors having exceeded their authority. Whether this tax is so excessive and illegal under the acts of Assembly, is the principal question presented for determination in the cause ; and this, as I have said, depends upon the construction given to the statutes. It was, undoubtedly, the policy of the framers of the act of 1836 to compel accepting school districts, to raise, by way of taxation on the property of the district, a sum for school purposes, not less than equal to, nor more than treble, the amount which the district might be entitled to receive out of *any* annual state appropriation. The language used is explicit to show that this was a leading intent, and the scope of the statute proves the operation of the intent was not to be confined to any single year, or to be governed by the specific amount of the public moneys appropriated by the particular act. It was to be expected, and experience has verified the expectation, that, in different years, different amounts would be appropriated by the legislature, accordingly as the exigencies of the public service and the pecuniary ability of the state might dictate. The amount of tax to be authorized by the citizens of the accepting districts would, therefore, necessarily fluctuate in proportion as the donation made by the state, in any one year, was greater or less ; but still it was to bear a certain proportion to the donation within the limits pointed out by the act. Being a general statute, its provisions would, of course, extend to and embrace all subsequent statutes on the same subject not inconsistent therewith, and the general rule established by it, for ascertaining the boundary, limiting the power of the school directors in respect to the amount of tax to be assessed within their precinct, is of prospective efficacy, unless there be some provision in a subsequent statute, establishing some other rule. The plaintiff below avers that such a provision is to be found in the act of 1838, which, while it increases the amount of the public appropriation, beyond the act of 1836, so as to make it equal to $1 for each taxable citizen, restrains the discretion of the school directors to the basis of taxation fixed by the earlier statute. But we all think this hypothesis proceeds upon a misapprehension of the language of the latter enactment. It must be confessed the section is somewhat obscurely worded, and that, without doing much violence to its grammatical construction, it admits of two readings very dissimilar

N 2

in meaning and results. If we make the last clause of the section beginning with the words, "said increased appropriation to be distributed," &c., applicable to the whole of the preceding portion, the construction contended for by the plaintiff below would seem to be the true one; but, if we confine its operation to the added sum of $108,919, there is nothing in it to restrict or alter the general intent of the act of 1836. The whole section would then read, "The sum of $108,919 be and the same is hereby added to the annual common school appropriation for the school year, which will commence on the first Monday of June, &c.—said increased apropriation to be distributed and paid out in the manner directed by the act to which this is a supplement, without any increase of taxation beyond the amount therein named; and such sum shall annually thereafter be added as will make the amount of appropriation equal to $1 for each taxable citizen of the Commonwealth." This reading satisfies all the terms of the act, giving an appropriate operation to each of its provisions. But, if it be objected that this transposition of the members of the section is unwarranted, an answer will be found in the general rule of construction that particular expressions and collocations of sentences in a statute will be made to subserve the general and leading intent of the law-makers. That intent being once ascertained in the initiative act, it is not to be supposed the legislature designed to depart from it, by a subsequent statute *in pari materia*, unless such a design be unequivocally manifested. This is especially true when the intent forms a radical feature of a system without which its symmetry would be marred and its action crippled. Now, we have seen that, at the very foundation of the scheme of education by common schools, devised by the act of 1836, lies the condition that, to entitle a district to its proportion of the public fund, the people of the precinct must agree to contribute, at least, an equal sum. This is, indeed, the corner-stone of the structure. Did the legislature contemplate its removal by the act of 1838? The great design of this law was to make the donation of the state bear a fixed proportion to the constantly fluctuating number of taxable inhabitants in the particular district; so that the sum to be given, for the support of the schools, should increase or decrease according to the number to be educated. The object was to make the system more efficient by providing means in a ratio commensurate with the exigencies of the population; but the object would be, in a great degree, defeated by ascertaining a particular sum as the basis of the voluntary taxation, to be submitted to by the peo-

ple, which, squared by such a rule, must continue to decrease, so far as the contribution of each taxable is involved, as the population of the district, and, consequently, the expense of the schools increased. We cannot think the legislature intended to depart so far from the policy of the act of 1836 as to provide a perpetually changing measure of the state donation, and a fixed and unchanging standard of the popular contribution, which must destroy the equality of burden designed by the earlier statute to be borne by the inhabitants of the several districts. This would seem to involve the contradiction of an intent to advance the prosperity of a favourite plan with one hand, and to retard it with the other. We cannot but believe, if such had been the design, it would have been expressed in language admitting of but one construction. But such language has not been employed, and, as the act of 1838 may, without impropriety, be so construed as to avoid the result to which the plaintiff's view of it would lead, we are best satisfied to give it a construction in consonance with the spirit of the acts associated with it. We feel fortified in this construction by a reference to the difficulties which would attend the assessment of a tax to be based on the districts' proportion of a fixed sum, which could only be ascertained by an enumeration of the whole number of taxable inhabitants in the state—a computation the school directors have no means of making; but which they would, in some way, be obliged to ascertain, inasmuch as, by the twelfth section of the act of 1836, a warrant is to be issued by them for the collection of the school-tax before they are entitled to receive any part of the state fund.

This construction of the statute proves that the tax for the payment of which the property of the plaintiff below was sold, was legally assessed, and, going to the ground-work of his action, renders unnecessary a determination of the other points raised on this record.                                              Judgment reversed.